# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                 Case No. 05-CR-329

**BRANDON CULL**
    **Defendant.**

## SENTENCING MEMORANDUM

  Defendant Brandon Cull pleaded guilty to participation in a conspiracy to distribute marijuana, contrary to 21 U.S.C. § 841(a)(1) & (b)(1)(D). The pre-sentence report ("PSR") set his base offense level at 16, U.S.S.G. § 2D1.1(c)(12), then subtracted 2 under the safety valve provision, § 2D1.1(b)(7), and 2 for acceptance of responsibility under § 3E1.1(a), for a final level of 12. Coupled with a criminal history category of I, the PSR set defendant's imprisonment range at 10-16 months under the advisory sentencing guidelines.

  The government advocated a sentence within the range, while defendant requested a sentence of probation with a condition of community confinement. Upon consideration of the arguments of counsel and all of the factors set forth in 18 U.S.C. § 3553(a), I decided to impose a split sentencing consisting of 2 months in prison, followed by 4 months of home confinement as a condition of supervised release. In this memorandum, I set forth my reasons.

## I. FACTS

Between April 2004 and April 2005, defendant conspired with Keith Kasprzyk to distribute marijuana. Defendant regularly fronted marijuana to Kasprzyk, charging about $5000 per pound and supplying between one-half and one pound at a time. In total, defendant provided about ten kilograms of marijuana to Kasprzyk over the course of the year. On other occasions, he purchased marijuana from Kasprzyk, often for personal use.

On or about March 25, 2005, law enforcement officers searched Kasprzyk's home pursuant to a warrant, seizing marijuana, drug paraphernalia and $10,000 cash. Kasprzyk agreed to cooperate against defendant, his some-time supplier, leading to the execution of a search warrant at defendant's home on April 5, 2005, and the seizure of 1400 grams of marijuana and $1980 cash. The government charged defendant by information, and he promptly agreed to plead guilty. In his version of the offense and at sentencing, he expressed remorse for his conduct and the effect it had on his family, and committed to a pro-social future.

## II. DISCUSSION

### A.     Sentencing Procedure

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005). First, I determine the advisory guideline range. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006). In the present case, neither side contested the

2

guideline calculations in the PSR or requested a departure. Therefore, I proceeded to step three – the imposition of sentence under § 3553(a).

**B.    Section 3553(a)**

In imposing sentence, the court must consider seven factors:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

I typically consider the § 3553(a) factors sequentially, evaluating the specifics of the case (i.e., the nature and circumstances of the offense, and the history and characteristics of the defendant) and the purposes of sentencing (i.e., punishment, deterrence, protection of the public and rehabilitation), before translating my findings and impressions into a numerical sentence. In imposing a specific sentence, I consider the kinds of sentences

3

available, the range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. I also seek to avoid unwarranted sentence disparities. E.g., United States v. Samaras, 390 F. Supp. 2d 805, 808-09 (E.D. Wis. 2005). After considering all of the above circumstances, the statute directs me to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a). This is the so-called parsimony provision, which requires the court to impose the least severe sentence necessary to satisfy the four purposes of sentencing – punishment, deterrence, protection of the public and rehabilitation.

While the guidelines remain an important consideration in selecting a specific sentence, neither Booker nor the structure of the statute elevates them above the other § 3553(a) factors. See United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005); see also United States v. Dean, 414 F.3d 725, 728 (7th Cir. 2005) ("Until Booker, the uses that a sentencing judge could make of the factors listed in section 3553(a) were severely circumscribed by the next subsection in order to preserve the mandatory character of the guidelines. 18 U.S.C. § 3553(b). But now that they are advisory, while section 3553(a) remains unchanged, judges will have to consider the factors that the section tells them to consider."). And, while on appeal a sentence within the guideline range is, in this circuit, considered presumptively reasonable, United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005), the same is not true at sentencing.

> The [sentencing] judge is not required--or indeed permitted, United States v. Brown, 450 F.3d 76, 81-82 (1st Cir. 2006)--to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and

4

>consistent with the sentencing factors listed in 18 U.S.C. § 3553(a). See, e.g., United States v. Miller, 450 F.3d 270, 275 (7th Cir. 2006). His choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. United States v. Walker, 447 F.3d 999, 1008 (7th Cir. 2006); United States v. Baker, 445 F.3d 987, 991 (7th Cir. 2006); United States v. Morales, 445 F.3d 1081, 1086 (8th Cir. 2006). The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered.

United States v. Demaree, No. 05-4213, 2006 U.S. App. LEXIS 20577, at *8-9 (7th Cir. Aug. 11, 2006). Therefore, while I continue to give the guidelines serious consideration in all cases – and to provide written reasons for any non-guideline sentence – I do not presume the guideline sentence to be the correct one and instead base the sentence on my consideration of all of the § 3553(a) factors.

**C.     Analysis**

    **1.     Nature of Offense**

As noted above, defendant conspired with Kasprzyk to distribute marijuana, in moderate amounts (a total of about 10 kilograms), over a period of one year. The government presented no evidence of weapon possession, violence or threats, or any recruitment or leadership role in the conspiracy, so the offense was not aggravated.

The government noted that defendant sold a more expensive and perhaps higher quality of marijuana, but I did not find that this was a particularly aggravating factor. To the extent that defendant sold the drug for more than usual, the government presented no evidence that he profited a great deal; the police seized less than $2000 from defendant's house and uncovered no expensive property or other evidence of a lavish lifestyle. Further, the government presented no evidence that this form of marijuana is more

5

Case 2:05-cr-00329-LA   Filed 08/30/06   Page 5 of 10   Document 11

dangerous or addictive. Therefore, although perhaps a factor I could consider, I did not find the nature of the marijuana in this case significant.[1]

### 2. Character of Defendant

Defendant was thirty-one years old, with a minimal prior record consisting of a ten-year-old drug paraphernalia conviction for which he received a small fine. Defendant graduated from high school with good grades and went on to complete some college courses. He had a steady, if not spectacular, employment history, working for his father's landscaping business for the past eight years and various other jobs before that.

Defendant's history was otherwise significant for marijuana and alcohol abuse, something that apparently ran in the family. Defendant's parents abused alcohol and cocaine, and divorced when defendant was eight years old, leaving him to be raised by his maternal grandparents. Defendant himself began drinking at age nine and smoking marijuana at age sixteen or seventeen, progressing to daily use and eventually causing his grandmother to kick him out of her house. He continued to drink and use marijuana until the fall of 2005, when he was arrested for drunk driving following his involvement in an accident.[2] To his credit, since the accident defendant has not used drugs and alcohol. All of his screens on pre-trial supervision were negative. For the past two years he had lived

---

[1] I also note that the courts of appeals have directed district judges not to consider for themselves the relative dangerousness of different varieties of the same controlled substance. See, e.g., United States v. Jointer, No. 05-4632, 2006 U.S. App. LEXIS 20383, at *8-9 (7th Cir. Aug. 9, 2006); United States v. Miller, 450 F.3d 270, 275 (7th Cir. 2006); United States v. Eura, 440 F.3d 625, 634 (4th Cir. 2006); United States v. Pho, 433 F.3d 53, 64 (1st Cir. 2006). I am aware of no findings from Congress or the Sentencing Commission on "high-grade" marijuana.

[2] The charges arising out of this incident were pending at the time of sentencing in the present case.

with his mother, helping her remain sober and assisting her after her longtime boyfriend died of cancer.

### 3. Purposes of Sentencing

I saw no evidence that defendant was dangerous or a particular risk of recidivism. However, I concluded that some confinement was necessary to provide just punishment and deter others, given the duration of the offense and the amount involved. Defendant's correctional needs were limited to possible substance abuse, but it appeared that he had taken steps to deal with those issues. Defendant owed no restitution and agreed to forfeit the money seized from his house.

### 4. Consideration of Guidelines

The guidelines called for a prison term of 10-16 months, which fell within Zone C of the Grid, allowing a split sentence of half prison and half community or home confinement. U.S.S.G. § 5C1.1(d). Under all the circumstances of this case, I found a sentence along those lines proper, but that a prison term of 5 months was greater than necessary. Defendant seemed to be taking steps to get back on the right track, abstaining from drugs and alcohol, working and maintaining a stable residence with his mother, who had also maintained sobriety for the past two years. I further noted that the offense was non-violent and involved modest amounts, and that defendant accepted responsibility for his conduct and expressed genuine remorse. His good performance on pre-trial release demonstrated his intentions to maintain pro-social conduct. Finally, his prior record was limited to a fine-only paraphernalia possession case.

Defendant argued that he should receive a probationary sentence, as did his co-actor, Kasprzyk. However, although their offense conduct was similar,[3] Kasprzyk received a substantial assistance motion from the government. Thus, the comparison, while one I could consider, was not entirely apt. Moreover, as discussed above, I concluded that a sentence including no imprisonment was insufficient to satisfy the need for just punishment and deterrence.

Thus, I determined that some period of confinement in prison was needed to promote respect for the law and deter others. Under all of the circumstances, I found a sentence of 2 months imprisonment sufficient but not greater than necessary to serve those purposes. Defendant had never been confined before, so this period was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). Consistent with U.S.S.G. § 5C1.1(d), I also imposed a period of 4 months home confinement to follow, which ensured that the purposes of just punishment and deterrence were fully met and that defendant was closely monitored for that period of time. This small variance from the guidelines was sufficiently supported by the facts of the case and did not create unwarranted disparity. Finally, I imposed a fine of $3000, the low end of the guideline range, which I also considered necessary to satisfy the purposes of punishment and deterrence. Based on his financial

---

[3]Kasprzyk's criminal history category was II, while defendant's was I.

8

Case 2:05-cr-00329-LA    Filed 08/30/06    Page 8 of 10    Document 11

situation, I determined that defendant could pay such a fine over time, and required that he make monthly payments of $100 as a condition of supervised release. Upon his release, I ordered defendant to serve a supervised release term of three years, with additional conditions, including a drug testing and treatment program.

While I based this non-guideline sentence on the specific circumstances of the offense and the individual characteristics of the defendant, I note that there was nothing extraordinary about this case or this defendant. He was not entitled to a departure under pre-Booker standards. Further, some of the factors I relied upon (e.g., prior substance abuse, minimal record, non-violent offense) could possibly apply to other defendants, as well. Nevertheless, under Booker and § 3553(a), I was empowered to impose such a sentence. See United States v. Castro-Suarez, 425 F.3d 430, 436 (7th Cir. 2005) (noting that a non-guideline sentence need not be supported by unusual circumstances, as a pre-Booker departure would; rather, all that is necessary is an adequate statement of the judge's reasons, consistent with § 3553(a), for thinking the sentence is appropriate for the particular defendant).

There have been suggestions in some recent appellate decisions that a district court may not vary from the guidelines unless it finds some factor unusual or unique to the defendant warranting the variance. See, e.g., United States v. Wallace, No. 05-3675, 2006 U.S. App. LEXIS 20735, at *15-16 (7th Cir. Aug. 14, 2006) (citing United States v. Rattoballi, 452 F.3d 127,133 (2d Cir. 2006)). It is difficult to see the basis for such a rule – which sounds very much like the old departure standard – in Booker or § 3553(a).[4]

---

[4]Perhaps the appellate courts are concerned that district judges will use their Booker discretion to implement broad policies inconsistent with those adopted by Congress or the

Moreover, such a rule improperly elevates the guidelines above the other factors set forth in § 3553(a).  In essence, it makes the guidelines the objective measure of the sentence, and disallows any other sentence unless the court is able to explain why the guideline sentence is wrong.  See Demaree, 2006 U.S. App. LEXIS 20577, at *8 (noting that the sentencing judge may not presume the guideline sentence correct).  The district courts' limited departure authority did not save the guidelines in Booker, see 543 U.S. at 234-35, and if appellate restriction of sentencing discretion continues such that the new system begins to resemble the old, another disruption may be in the offing.

### III.  CONCLUSION

Therefore, for the reasons stated, I committed defendant to the custody of the Bureau of Prisons for 2 months, followed by 4 months of home confinement as a condition of three years supervised release.  Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

Commission.  See Wallace, 2006 U.S. App. LEXIS 20735, at *16-17 (discussing variance from the 100:1 crack-powder ratio).  As Judge Lynch noted at a seminar I recently attended, very few such policy issues arise in the course of sentencing defendants. Further, as I took great pains to explain in my decisions varying from the 100:1 ratio, I did not impose my own personal policy views; rather, I attempted to follow § 3553(a) in light of the Commission's well-researched recommendation that the ratio be reduced or eliminated.  See United States v. Leroy, 373 F. Supp. 2d 887, 893 (E.D. Wis. 2005).  It would, in my view, be a serious mistake for the appellate courts to adopt an across-the board standard disallowing or disfavoring non-guideline sentences not supported by factors unique to the particular defendant based on an atypical issue such as the crack-powder disparity.